1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8

9    JOSEPH WELDON SMITH,                    )

10                       Petitioner,          )        2:07-CV-00318-JCM-CWH

11   vs.                                      )

12   RENEE BAKER, *et al.*,                   )              **ORDER**

13                       Respondents.         )

14   _____/

15        In this habeas corpus case under 28 U.S.C. § 2254, the respondents have filed a motion to

16   dismiss petitioner Smith's first amended petition for writ of habeas corpus, in which they argue that

17   numerous claims in the petition should be dismissed under the doctrine of procedural default or for

18   failure to state a federal claim for relief.[1]  ECF No. 118.

19        Smith has filed his opposition to the motion to dismiss.  ECF No. 141/152/160.  He has also

20   filed motions for an evidentiary hearing (ECF No. 140) and for leave to conduct discovery (ECF No.

21   146).  The court's decision on all three motions is set forth below.

22        I  *Procedural History*

23        On December 11, 1992, Smith was convicted of three counts of murder with the use of a

24   deadly weapon, and one count of attempted murder with the use of a deadly weapon.  The convictions

25   _____

26        [1]        Respondents also argue in their motion that the petition should be dismissed due to a lack
     of proper verification.  That alleged defect has been cured.  ECF No. 124.

were pursuant to jury verdicts in the Eighth Judicial District Court, Clark County, Nevada.  The jury sentenced Smith to death for two of the three murders, the murders of Wendy and Kristy Cox, and imposed a sentence of life without the possibility of parole for the murder of Judith Smith.  The trial judge sentenced Smith to twenty years incarceration for the attempted murder of Frank Allen and imposed an additional twenty years for the use of a deadly weapon.

Smith appealed to the Nevada Supreme Court.  The Nevada Supreme Court affirmed the convictions but vacated the deadly weapon enhancement.  *Smith v. State*, 110 Nev. 1094, 881 P.2d 649 (1994).  The state supreme court also vacated the death sentences and remanded for a new punishment trial.  *Id*.

On April 18, 1996, a jury again sentenced Smith to death for the murders of Wendy and Kristy Cox.  On appeal, the Nevada Supreme Court vacated the death sentence as to the murder of Kristy (replacing it with a life sentence without the possibility of parole), but affirmed the death sentence for the murder of Wendy.  *Smith v. State*, 114 Nev. 33, 953 P.2d 264 (1998).  The Nevada Supreme Court denied Smith's petition for rehearing and issued its remittitur on March 31, 1998.  On May 20, 1998, Smith was sentenced by the lower court in accordance with the state supreme court's remand.

On August 11, 1998, Smith filed, *pro se*, a state habeas petition in the Eighth Judicial District Court, Clark County.  Having been appointed counsel, he filed an amended petition on September 21, 1999.  On July 15, 2003, he filed supplemental points and authorities in support of his petition.  On January 5, 2005, Smith filed a supplemental brief in support of his petition.  The Eighth Judicial District Court denied relief on April 25, 2005.  Smith appealed.  On September 29, 2006, the Nevada Supreme Court affirmed the lower court  in an unpublished order.  The Nevada Supreme Court denied rehearing on November 29, 2006.

On March 13, 2007, Smith initiated this action by filing, *pro se*, a federal petition for writ of habeas corpus.  ECF No. 1.  Represented by the Federal Public Defender's office (FPD), Smith filed his first amended petition in this court on October 9, 2007.  ECF No. 40.  On February 28, 2008,

1  this court granted a stipulation to stay the proceedings and hold them in abeyance pending Smith's

2  exhaustion of state remedies.  ECF No. 53.

3         On April 2, 2009, the FPD was relieved as counsel for Smith.  ECF No. 79.  Mario Valencia

4  was appointed as counsel on June 29, 2009.  ECF No. 85.  On February 9, 2011, this court granted

5  Smith's motion to lift the stay and reopen the proceedings.  ECF No. 98.  On April 4, 2011, the State

6  filed the motion to dismiss that is addressed herein.

7         On September 6, 2011, this court granted Valencia's motion to withdraw as counsel (ECF No.

8  129), and on November 10, 2011, the FPD again undertook representation of Smith (ECF No.135).

9         II.  *Procedural Default*

10         A federal court will not review a claim for habeas corpus relief if the decision of the state

11  court denying the claim rested on a state law ground that is independent of the federal question and

12  adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).  The Court

13  in *Coleman* stated the effect of a procedural default as follows:

14             In all cases in which a state prisoner has defaulted his federal claims in
           state court pursuant to an independent and adequate state procedural

15             rule, federal habeas review of the claims is barred unless the prisoner
           can demonstrate cause for the default and actual prejudice as a result of

16             the alleged violation of federal law, or demonstrate that failure to
           consider the claims will result in a fundamental miscarriage of justice.

17

18  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

19         A state procedural bar is "independent" if the state court explicitly invokes the procedural rule

20  as a separate basis for its decision.  *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).  A

21  state court's decision is not "independent" if the application of a state's default rule depends on a

22  consideration of federal law.  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).  Also, if the

23  state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

24  has held that the ambiguity may serve to defeat the independence of the state procedural bar.  *Valerio*

25  *v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir.

26

2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).  In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy.  Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586.  The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.*  Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

1.  Nev. Rev. Stat. § 34.726

Respondents contend that Claims One through Nine, Twelve, Fourteen (as to the ineffective assistance of counsel claim), and Sixteen through Thirty are all procedurally defaulted because these claims were presented for the first time in Smith's second state post-conviction proceeding and the Nevada Supreme Court barred them as untimely pursuant to Nev. Rev. Stat. § 34.726(1).  See ECF No. 117-10, p. 2-9.[2]  Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year after the Nevada Supreme Court issues its remittitur.

Respondents meet their initial pleading burden under *Bennett* by asserting that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.726 to Smith's second state post-conviction

---

[2]     Citations to page numbers for electronically filed documents are based on the ECF pagination.

4

1 petition constitutes an independent and adequate state procedural grounds for denying relief

2       Smith challenges the independence and adequacy of the rule.  He concedes that the Ninth

3 Circuit has held that the bar was generally adequate to bar federal review of state petitions that were

4 filed up to a certain point in time, but argues that the bar was no longer adequate at the time of his

5 purported default due to changes to post-conviction review procedure brought about by *Crump v.*

6 *Warden*, 113 Nev. 293, 934 P.2d 247 (1997).[3]  In *Crump*, the Nevada Supreme Court held that the

7 mandatory appointment of post-conviction counsel required by Nev. Rev. Stat. § 34.820(1)(a) carries

8 with it the right to have that counsel provide effective assistance.  113 Nev. at 302-05, 934 P.2d at

9 252-54.

10       According to Smith, the Nevada Supreme Court "has never articulated a time limit for filing a

11 successive petition vindicating the right to effective assistance of post-conviction counsel."  ECF No.

12 141, p. 50.  The Nevada Supreme Court in *Pellegrini v. State*, which was decided after *Crump*,

13 specifically held that § 34.726 applies to successive petitions.  *Pellegrini*, 117 Nev. 860, 870, 34 P.3d

14 519, 526 (2001).  While § 34.726 plainly provides that the petition must be filed with one year of the

15 date on which the Nevada Supreme Court issues its remittitur on direct appeal, Smith suggests that

16 Nevada Supreme Court has not clearly established that that time limit applies to a successive petition

17 challenging the effectiveness of counsel in the first post-conviction proceeding.

18       While it may be true that the Nevada Supreme Court has not explicitly addressed this issue in

19 a published opinion, the cases Smith relies upon to show that there is uncertainty or inconsistency in

20

21     [3]    Smith identifies December 12, 2005, as the relevant date, indicating that that is when he
filed his exhaustion petition. ECF No. 141, p. 49, 54.  In actuality, however, his exhaustion petition was
22 not filed until March 31, 2008.  ECF Nos. 65/112-3.  On December 12, 2005, he had just filed his
opening brief in the Nevada Supreme Court in relation to the denial of his *first* state post-conviction
23 petition.  ECF No. 111-10.

24     Respondents submit that the default occurred in January 2005, when Smith filed the petition that,
according to respondents, should have included the claims that were later determined to be untimely by
25 the Nevada Supreme Court.  ECF No. 155, p. 5-6.

26

this regard are not convincing.  First, he cites to two orders from cases in the state district court,
neither of which addresses Nev. Rev. Stat. § 34.726.  See ECF No. 141, p. 52 (citing *Greene v. State*,
Case No. C124806, and *Rhyne v. McDaniel*, Case No. CV-HC-08-763).  As for Nevada Supreme
Court cases, he offers three examples:  *Feazell v. State*, Nev. Sup. Ct. No. 37789, Order Affirming in
Part and Vacating in Part (November 14, 2002) (ECF No. 68-2, p. 39-40; ECF No. 68-3, p. 1-7);
*Middleton v. Warden*, 120 Nev. 664, 98 P.3d 694  (2004); and *Rippo v. State*, 122 Nev. 1086, 146
P.3d 279 (2006).

None of these cases reference Nev. Rev. Stat. § 34.726 either.  *Feazell* references the
successive petition bar at Nev. Rev. Stat. 34.810(1)(b) (discussed below), but even assuming it serves
as an example of the inconsistent application of that rule, the case shows, at most, that the Nevada
Supreme Court, in some instances, may exercise its discretion to bypass an applicable procedural bar
to reach an issue with obvious merit.  Likewise, in *Middleton*, the Nevada Supreme Court merely
gave the petitioner another opportunity to litigate his post-conviction petition with a new attorney
after finding that his existing attorney had "repeatedly violated this court's orders and procedural
deadlines" and submitted work product that was "wholly substandard and unacceptable."  120 Nev. at
667-69, 98 P.3d at 696-98.  The court's exercise of discretion in these isolated cases does not
necessarily render the rule inadequate to support a state decision in other cases.  *See Walker v. Martin*,
131 S.Ct. 1130 (2011) (explaining that a rule is not automatically inadequate "upon a showing of
seeming inconsistencies" and that state court must be allowed discretion "to avoid the harsh results
that sometimes attend consistent application of an unyielding rule").

In *Rippo*, the court addressed whether a certain penalty phase jury instruction regarding the
consideration of mitigating circumstances was improper.  146 P.3d at 285.  Ostensibly, the Nevada
Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. §
34.726 had expired.

Placed in context, however, the state supreme court's consideration of the issue has little, if

any, bearing on whether § 34.726 is consistently applied.   The state petition for writ of habeas corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner. *Id.* at 282.  The state district court had already denied Rippo's petition when the Nevada Supreme Court announced the rule in *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[4]  The Nevada Supreme Court found good cause for Rippo raising a *McConnell*-based claim on appeal, as opposed to returning to the lower court, because the legal basis for the claim "was not available at the time he pursued his habeas petition in the district court" and because the claim "present[ed] questions of law that [did] not require factual determinations outside the record." *Rippo*, 146 F.3d. at 283 (internal citations omitted).

The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court addressed the issue, not as a freestanding ground for relief, but because of the issue's potential impact on the court's harmless error analysis. *See id.* at 285, 287-88.  Thus, rather than arbitrarily overlook statutory default rules, the Nevada Supreme Court merely considered the impact of the defective the jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had been raised in a manner consistent with Nevada law.

Smith also argues that the rule was an inadequate procedural bar as applied to his second state post-conviction petition.  With regard to that proceeding, he faults the Nevada Supreme Court for not applying *Crump* or acknowledging that he had a right to effective assistance of counsel in the initial habeas proceeding.  However, the Nevada Supreme Court did, in fact, note that ineffective assistance of post-conviction counsel could provide good cause for a default under § 34.726 and cited to *Crump* as authority.  ECF No. 117-10, p. 4-5.  The court concluded that Smith had not shown good cause on that ground because he had not explained why he waited eighteen months after the conclusion of his

---

[4]      In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated."  *McConnell*, 102 P.3d at 624.

1  first post-conviction proceeding to file his successive petition.  *Id.*

2      Smith has not shown that the Nevada Supreme Court inconsistently applies Nev. Rev. Stat.

3  §34.726 so as to undermine the adequacy of the rule.  Even assuming, however, that he has carried his

4  modest burden under *Bennett*, the respondents can show that the procedural rule was "clear,

5  consistently applied, and well-established" at the time of Smith's default.

6      The scope of the state's "ultimate burden" depends on the nature and depth of the petitioner's

7  allegations of inadequacy.  *Bennett*, 322 F.3d at 584-85 (quoting *Hooks v. Ward*, 184 F.3d 1206, 1217

8  (10th Cir. 1999)).  The respondents have provided a list of over 900 Nevada Supreme Court opinions

9  (from 2004 forward) in which they claim the court imposed the rule.  ECF No. 156-2.  Although the

10 list is composed of mostly non-capital cases, Nevada courts do not appear to distinguish between

11 capital and noncapital cases in applying Nev. Rev. Stat. § 34.726.  *Cf. Bennett v. Mueller*, 322 F.3d

12 573, 583-84 (9th Cir. 2003) (recognizing that "California's rules governing timeliness in capital cases

13 differ from those governing noncapital cases")*; Valerio*, 306 F.3d at 778 (noting Nevada courts's

14 willingness to consider merits of a claim not raised in an earlier proceeding when death sentence at

15 issue).

16     Based on the foregoing, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear,

17 consistently applied, and well-established" procedural rule at the time of Smith's default.  The court

18 now turns to particular claims for which respondents assert the bar.

19     *Claims One and Two* – In Claim One, Smith alleges that his constitutional rights were violated

20 because the Nevada courts lacked jurisdiction to adjudicate his criminal proceeding because no

21 complaint was filed prior to the preliminary examination.  In Claim Two, he contends that his

22 constitutional rights were violated because the prosecutors and the Nevada courts did not adhere to

23 the state statute that vests the trial court with jurisdiction.  These claims are not procedurally defaulted

24 because they were fairly presented to the Nevada Supreme Court in Smith's first state post-conviction

25 proceeding.  ECF No. 111-12, p. 8-10, 37-38.

26

8

1        *Claim Three* – In Claim Three, Smith alleges that his rights to due process and effective

2   assistance of counsel were violated because the trial court and his counsel failed to make a record of

3   venire strikes and because of other defects in the jury selection process.  Because Smith did not

4   present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is

5   procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

6        *Claim Four* – In Claim Four, Smith alleges he received ineffective assistance of counsel at his

7   second punishment trial due to counsel's failure to develop and present mitigating evidence,

8   especially evidence relating to Smith's mental health.  Because Smith did not present this claim to the

9   Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted

10  due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

11       *Claim Five* – In Claim Five, Smith alleges that his right to effective assistance of counsel was

12  violated because his trial counsel failed to demand the resources necessary to represent Smith and

13  because the public defender's office was overwhelmed with work at the time of Smith's trial.

14  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-

15  conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. §

16  34.726 to bar the claim.

17       *Claims Six and Seven* – In Claim Six, Smith alleges that his right to due process was violated

18  because the trial court failed to inquire into his competence and he was forced to stand trial while

19  incompetent.  In Claim Seven, he alleges that trial counsel were ineffective in failing to request a

20  competency hearing prior to both the first trial and the second penalty hearing.  These claims are not

21  procedurally defaulted because they were fairly presented to the Nevada Supreme Court in Smith's

22  first state post-conviction proceeding.  ECF No. 111-12, p. 12-13, 35.

23       *Claims Eight and Nine* – In Claim Eight, Smith challenges the constitutionality of the trial

24  court's instructions to the jury regarding depravity of mind, torture, and mutilation, as an aggravating

25  circumstance.  In Claim Nine, he claims that his constitutional rights were violated because the trial

26

court erroneously instructed the jury that a finding of "depravity of mind" would render him eligible for the death penalty even though the statute had been amended and no longer included "depravity of mind" as an aggravating circumstance.

Smith presented Claim Eight to the Nevada Supreme Court on direct appeal.  ECF No. 109-13, p. 7-12.  As such, it is not procedurally defaulted.  He also presented a claim that is similar to Claim Nine on direct appeal, but relied only on state law.  *Id.*, p. 6.  Because Smith did not present Claim Nine to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.[5]

*Claim Twelve* – In Claim Twelve, Smith alleges that his constitutional rights were violated because his trial counsel refused to testify on his behalf.  This claim is not procedurally defaulted because it was fairly presented to the Nevada Supreme Court in Smith's first state post-conviction proceeding.  ECF No. 111-10, p. 31-33; ECF No. 111-12, p. 36-37.

*Claim Fourteen (IAC)* – As part of Claim Fourteen, Smith claims that he was deprived of effective assistance of counsel as a result of counsel's failure to object to the prosecutor's misconduct during closing arguments.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

*Claim Sixteen* – In Claim Sixteen, Smith claims that his constitutional rights were violated because of an improper jury instruction regarding reasonable doubt.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

---

[5] This court is not persuaded by Smith's argument that the bar is inadequate as applied to Claim Nine or that failure to consider the claim will result in a fundamental miscarriage of justice. Notwithstanding any alleged defect with "depravity of mind" instruction, the jury found that the murder of Wendy Cox involved mutilation beyond the act of killing itself and the Nevada Supreme Court affirmed that finding on direct appeal. *Smith v. State*, 114 P.2d 264, 267-68 (Nev. 1998).  Thus, Smith is not actually innocent of the death penalty.

*Claim Seventeen* – In Claim Seventeen, Smith alleges that his constitutional rights were violated because the trial court conducted voir dire without sequestering individual members of the venire.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

*Claim Eighteen* – In Claim Eighteen, Smith alleges that his constitutional rights were violated because trial counsel failed to move for a mistrial after a disruption caused by a victim's family member that impermissibly prejudiced the jury.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

*Claim Nineteen* – In Claim Nineteen, Smith alleges that his constitutional rights were violated due to the overwhelming and prejudicial security arrangements in the courtroom during Smith's trial. Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

*Claim Twenty* – In Claim Twenty, Smith alleges that his constitutional rights were violated because the trial judge allowed jurors unfettered discretion to consider non-statutory aggravating factors.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

*Claim Twenty-one* – In Claim Twenty-one, Smith alleges that his constitutional rights were violated because the trial court allowed inflammatory testimony from a witness that was more prejudicial than probative.  Because Smith did not present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

11

1   *Claim Twenty-two* – In Claim Twenty-two, Smith alleges that his constitutional rights were

2   violated due to the admission of evidence relating to Judy Cox's murder in Smith's second penalty

3   trial.  Smith raised a similar claim on direct appeal, but relied only on state law, not federal law.  ECF

4   No. 109-13, p. 12-13.  Because Smith did not present his federal claim to the Nevada Supreme Court

5   until is second state post-conviction proceeding, it is procedurally defaulted due to the court's

6   application of Nev. Rev. Stat. § 34.726 to bar the claim.

7   *Claim Twenty-three* – In Claim Twenty-three, Smith claims that his constitutional rights were

8   violated by virtue of a jury instruction that undermined the presumption of innocence he is entitled to

9   under state and federal law.  Because Smith did not present this claim to the Nevada Supreme Court

10   until is second state post-conviction proceeding, it is procedurally defaulted due to the court's

11   application of Nev. Rev. Stat. § 34.726 to bar the claim.

12   *Claim Twenty-four* – In Claim Twenty-four, Smith alleges that the Nevada Supreme Court

13   failed to conduct an adequate appellate review in his case.  He concedes that he did not raise this

14   claim in state court until his second post-conviction proceeding.  He argues, however, that he is

15   excused from any procedural default because the Nevada courts do not provide a forum in which to

16   litigate the claim.  His argument is without merit.  *See Roberts v. Arave*, 847 F.2d 528, 530 (9th Cir.

17   1988) ("[T]he apparent futility of presenting claims to state courts does not constitute cause for

18   procedural default.").  Claim Twenty-four is procedurally defaulted due to the court's application of

19   Nev. Rev. Stat. § 34.726 to bar the claim.

20   *Claim Twenty-five* – In Claim Twenty-five, Smith claims that execution by lethal injection

21   violates the constitutional prohibition against cruel and unusual punishment.  Because Smith did not

22   present this claim to the Nevada Supreme Court until is second state post-conviction proceeding, it is

23   procedurally defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

24   *Claim Twenty-six* – In Claim Twenty-six, Smith claims that he was not afforded effective

25   assistance of counsel on direct appeal.  Because Smith did not present this claim to the Nevada

26

1    Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted due to the

2    court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

3           *Claim Twenty-seven* – In Claim Twenty-seven, Smith claims that his constitutional rights were

4    violated because his capital trial, sentencing, and direct review, were all conducted before judges

5    whose tenure was dependent upon popular election.  Because Smith did not present this claim to the

6    Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally defaulted

7    due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

8           *Claim Twenty-eight* – In Claim Twenty-eight, Smith that his constitutional rights were

9    violated because the Nevada capital punishment system operates in an arbitrary and capricious

10   manner.  Because Smith did not present this claim to the Nevada Supreme Court until is second state

11   post-conviction proceeding, it is procedurally defaulted due to the court's application of Nev. Rev.

12   Stat. § 34.726 to bar the claim.

13          *Claim Twenty-nine* – In Claim Twenty-nine, Smith that his death sentence is unconstitutional

14   due to the restrictive conditions on Nevada's death row.  Because Smith did not present this claim to

15   the Nevada Supreme Court until is second state post-conviction proceeding, it is procedurally

16   defaulted due to the court's application of Nev. Rev. Stat. § 34.726 to bar the claim.

17          *Claim Thirty* – In Claim Thirty, Smith claims that he is entitled to habeas relief because of the

18   cumulative impact of all the errors identified throughout his petition.  The claim was not presented to

19   the state court until Smith second post-conviction proceeding.  Even so, this court will nonetheless

20   consider the cumulative impact of constitutional errors properly brought before this court.  *See Killian*

21   *v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (stating that "even if no single error were prejudicial,

22   where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial

23   as to require reversal.' ") (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

24          Finally, Smith argues that Claims Eight, Nine, Ten, Fourteen, Sixteen, Twenty, Twenty-Three,

25   and Twenty-Eight were exhausted on direct appeal by virtue of the Nevada Supreme Court's

26

13

1   mandatory review of death sentences under Nev. Rev. Stat. § 177.055.  Nev. Rev. Stat. § 177.055

2   requires the state supreme court to consider whether the evidence supported the finding of the

3   aggravating circumstances; whether the sentence was imposed under the influence of passion,

4   prejudice, or any other arbitrary factor; and whether the death sentence was excessive.

5          In order to find any claims exhausted by virtue of the Nevada Supreme Court's review under

6   Nev. Rev. Stat. § 177.055, this court must be satisfied that such review encompassed the specific

7   factual and a federal law grounds advanced by the petitioner in his federal petition.  *See Comer v.*

8   *Schriro*,  463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims

9   were impliedly exhausted under the Arizona Supreme Court's independent review process).  In

10  allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to Arizona's statutes

11  and case law, the Arizona Supreme Court "examines the entire record, particularly the sentencing

12  hearing, to determine if any procedural errors occurred or other arbitrary factors influenced the

13  sentencing court's decision to impose the death sentence," and that the court "is clearly conscious of

14  its duty to respect the dictates of the Eighth and Fourteenth Amendments and to ensure that the death

15  penalty is not imposed in an arbitrary and capricious fashion."  *Id*. at 955.  In addition, the court of

16  appeals held that only claims that are "clearly encompassed within Arizona's independent review"

17  and  "readily apparent from the record" will be deemed impliedly exhausted.  *Id*. at 956.

18         Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

19  apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055.  *Sechrest v.*

20  *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Smith has not shown that any of the

21  claims at issue are "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily

22  apparent" in the record reviewed by the Nevada Supreme Court.  Thus, none of the claims were

23  exhausted on direct appeal by operation of the mandatory review statute.

24                 2.  Nev. Rev. Stat. § 34.810

25         Respondents contend that Claims Fourteen (as to the due process claim) and Thirty are

26

14

1  procedurally defaulted because, in Smith's first state post-conviction proceeding, the Nevada

2  Supreme Court barred them under Nev. Rev. Stat. § 34.810 due to Smith's failure to raise the claims

3  on direct appeal.  See ECF No. 111-12, p. 38.  Nev. Rev. Stat. § 34.810(1)(b)(2) requires dismissal of

4  claims that could have been raised on direct appeal or a prior post-conviction petition, but were not.

5          The Ninth Circuit ruled in *Valerio*, 306 F.3d at 777-78, that the successive petition bar is

6  inadequate to bar federal review in capital cases.  As such, the respondents have the burden "to

7  demonstrate that the law has subsequently become adequate."  *King v. LaMarque*,  464 F.3d 963, 967

8  (9th Cir. 2006).  Because the respondents did not make such a showing in their reply, they have not

9  met their "the ultimate burden" of proving the adequacy of the state bar.

10                  3.  Claims waived by failure to raise in justice court

11          Respondents contend that Claims One and Two are procedurally defaulted because, in Smith's

12  first state post-conviction proceeding, the Nevada Supreme Court deemed the claims waived due to

13  Smith's failure to raise them in the justice court.  See ECF No. 111-12, p. 37-38.  The Nevada

14  Supreme Court cited *State v. Plunkett*, 62 Nev. 265, 271, 149 P.2d 101, 104 (1944), which

15  held that "[j]urisdiction of the magistrate to issue the warrant of arrest was beyond question when

16  the defendant failed by appropriate proceeding to attack the complaint prior to the preliminary

17  examination."

18          Smith has carried his burden under *Bennett* of placing the defense in issue, by asserting

19  specific factual allegations showing the inadequacy of the rule, specifically the rarity with which the

20  rule has been applied.  See ECF No. 141, p. 15.  Because the respondents did not address the issue in

21  their reply, they have not met their "the ultimate burden" of proving the adequacy of the state bar.

22  Claims One and Two are not procedurally defaulted.

23                  4.  Cause and Prejudice

24          Smith argues that, for a variety of reasons, any procedural default of certain claims must be

25  excused because can show cause for the default and actual prejudice.  "[T]he existence of cause for a

26

procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Smith contends that ineffective assistance of appellate counsel serves as cause for any defaults related to Claims Three, Five, Six, Eight, Nine, Fourteen, Sixteen, Seventeen, Nineteen, Twenty, Twenty-One, Twenty-Three, Twenty-Seven, Twenty-Eight and Thirty and that he was prejudiced by his counsel's failure to raise these issues on direct appeal. Because Smith had a constitutional right to counsel on direct appeal, ineffective assistance of counsel in that proceeding can constitute "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 752-53. As discussed above, however, Smith's claim of ineffective assistance of appellate counsel is itself defaulted, thus, it cannot be the basis for cause, unless he can show cause and prejudice with respect to that claim also. *See Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000).

Although Smith did not have a constitutional right to effective assistance of post-conviction counsel, the Supreme Court in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), held that, in collateral proceedings that provide the first occasion to raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction counsel in that proceeding may establish cause for a prisoner's procedural default of such a claim. *Martinez*, 132 S. Ct. at 1315. The Court in *Martinez* stressed, however, that its holding was a "narrow exception" to the rule in *Coleman* that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez*, 132 S.Ct. at 1315. The Court also took care to point out that the exception does not extend beyond ineffective assistance at trial claims. *See id.* at 1320. Thus, the alleged ineffectiveness of Smith's initial post-conviction counsel cannot serve as cause to excuse the default of his claims of ineffective assistance of *appellate* counsel.

Smith also claims that his mental illness establishes cause to overcome any procedural defaults of his claims. As a general matter, mental impairments do not establish cause because they

are not external to the defense.  *See*, *e.g.*, *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (borderline IQ of 76 did not establish cause).  The evidence that Smith proffers to support this argument is not particularly compelling.  See ECF No. 142-10, p. 58-63.  Moreover, the argument is substantially undermined by the fact that Smith has been represented by counsel throughout his direct appeal and post-conviction proceedings.  *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).  In sum, this court is not convinced that mental illness prevented Smith from complying with Nevada's procedural rules.

In his initial opposition to the respondents' motion to dismiss, Smith argues that ineffective assistance of post-conviction counsel was the cause for his defaults to Claims Eighteen, Nineteen, Twenty-four, Twenty-six, and Twenty-nine.  Subsequent to the decision in *Martinez*, he added Claims Four, Five, Seven, Nine, Twelve, and Fourteen to this list.[6]

As noted above, *Martinez* held that, when state law does not allow a claim of ineffective assistance at trial to be raised in an earlier proceeding, ineffective assistance of counsel in an initial post-conviction proceeding may establish cause for a prisoner's procedural default of such a claim. The Ninth Circuit has noted that, "*Martinez* made clear that a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*,[7] whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice."  *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (footnote added).  Under *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors.  *Strickland*, 466 U.S. at 684.

There is a strong presumption that an attorney performed within the wide range of

---

[6]     He also makes arguments that appear to be related to Claim Ten.  ECF No. 152, p. 25-27. Respondents do argue, however, that Claim Ten is procedurally defaulted and concede that it likely requires a response on the merits.  ECF No. 118, p. 30.

[7]     *Strickland v. Washington*, 466 U.S. 668 (1984)

professional competence, and the attorney's performance will be deemed to have been deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Id*. at 689, 694.  To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different.  *Id*. at 694.  "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U .S. at 689.  As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and citation omitted).

Claims Nineteen, Twenty-four, Twenty-six, and Twenty-nine are not ineffective assistance of trial counsel claims.  As such, even with the issuance of *Martinez*, Smith cannot rely on ineffective assistance of post-conviction counsel to establish cause and prejudice with respect to those claims. And, as discussed above, Claims Seven and Twelve are not procedurally defaulted despite respondents arguments to the contrary.  Thus, only Claims Four, Five, Nine,[8] Fourteen, and Eighteen remain as claims to which *Martinez* would potentially apply in this case.  For the reasons that follow, however, Smith has not carried his *Martinez* burden with respect to those claims.

The application of the *Strickland* test in this instance means that Smith is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for their errors, there is a reasonable probability that Smith would have received relief on a claim of ineffective assistance of trial counsel in state court.

Claim Four is premised on allegations that counsel, in relation to his second punishment trial, failed to develop and present mitigating evidence, especially evidence relating to Smith's mental

---

[8] Although Claim Nine is primarily a challenge to the "depravity of mind" jury instruction, it also contains an allegation that trial counsel were ineffective in failing to object to the instruction.

health.  In support of this claim, Smith proffers the opinions of Dr. Paula Lundberg-Love, a consulting forensic psychologist, and Dr. Richard Dudley, a forensic psychiatrist, both of whom evaluated Smith in 2007, at the request of current counsel.  ECF No. 40-3, p. 1-35 (Lundberg-Love); ECF No. 40-4, p. 246-52 (Dudley).  Smith also refers to records of his communications with the court and his counsel in this case and previous cases, as well as evidence showing that he had a long history of living beyond his means while pursuing implausible "get rich" schemes.

According to her report, Dr. Lundberg-Love conducted an extensive review of records related to Smith, including his correspondence with courts and counsel, records related to fraudulent real estate transactions, proper person legal pleadings, court transcripts, school records, a prior competency evaluation, memoranda of investigative interviews with family and friends, and other materials typically relied upon by mental health experts.[9]  ECF No. 40-3, p. 2.  Relying heavily on excerpts from the foregoing records, she compiled of a lengthy, somewhat-chronological recounting of various acts, statements, and writings by Smith that led her to conclude that Smith suffers from a delusional disorder of the grandiose type.  *Id*., p. 2-35.

According to his report, Dr. Dudley reviewed various documents and records related to this case, "some of Mr. Smith's prior legal matters," and other material similar to that reviewed by Dr. Lundberg-Love.  ECF No. 40-4, p. 248.  He also performed a psychiatric examination of Smith in September of 2007.  *Id*.  Dr. Dudley noted that, despite being extremely bright, Smith exhibited paranoid and grandiose thinking that compromised his decision-making capabilities and judgment.  *Id*., p. 248.  He also noted that Smith's paranoid thinking and grandiosity can elevate to the point that Smith "evidences specific paranoid and grandiose delusions."  *Id*.  His report gives examples of instances, both from his examination of Smith and from Smith's past, in which Smith's statements and behavior reflected his distorted thinking.  *Id*., p. 249-51.

---

[9]      Based on her report, it does not appear as if Dr. Lundberg-Love had any personal contact with Smith prior to rendering her opinion.

1    While Smith argues that trial counsel were ineffective by not presenting evidence regarding

2    Smith's mental illness and how it impacted his behavior, this court questions the mitigatory value of

3    the evidence he proffers to support this claim.  There is some chance the evidence may have served to

4    evoke sympathy for Smith or cast his culpability for the murders in a different light, but there is at

5    least an equal chance that it would have merely confirmed that Smith is an inveterate and incurable

6    schemer who murdered his family when the pressure to sustain his fraudulent lifestyle became too

7    much for him to handle.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1410 (2011) (noting that

8    petitioner's newly-proffered evidence was "by no means clearly mitigating, as the jury might have

9    concluded that Pinholster was simply beyond rehabilitation").  Thus, even with his new evidence,

10   Smith has not shown a reasonable probability of a more favorable outcome.  Accordingly, he has not

11   shown that post-conviction counsel provided ineffective assistance in failing to advance Claim Four.

12   As mentioned above, Claim Five alleges that Smith's right to effective assistance of counsel

13   was violated because the public defender's office failed to provide him with resources necessary for

14   his defense.  According to Smith, the alleged deprivation of resources stemmed from his refusal to

15   take a polygraph examination.

16   In *United States v. Cronic*, 466 U.S. 648 (1984), the Court recognized that prejudice is, in

17   most cases, an essential part of a claim of ineffective assistance of counsel:

18   [T]he right to the effective assistance of counsel is recognized not for its own sake, but
     because of the effect it has on the ability of the accused to receive a fair trial. Absent
19   some effect of challenged conduct on the reliability of the trial process, the Sixth
     Amendment guarantee is generally not implicated.

20

21   *Cronic*, 466 U.S. at 658.  The *Cronic* Court went on to hold, however, that there are "circumstances

22   that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is

23   unjustified." *Id*.  Examples of such circumstances are complete denial of counsel at a critical stage of

24   trial or failure on the part of counsel to subject the prosecution's case to meaningful adversarial

25   testing. *Id*. at 659.  "Circumstances of that magnitude may be present on some occasions when

26

20

although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id*. at 659–60.

In this case, Smith's allegations regarding lack of resources provided for his defense by the public defender's office do not show that his defense was so undermined that there should be a presumption of prejudice, under *Cronic*, without inquiry into the actual conduct of the trial.  As such, Claim Five does not set forth a viable claim that the alleged lack of resources was a violation of Smith's right to effective assistance of counsel.  Accordingly, Smith's counsel were not ineffective for not raising the claim in the first state post-conviction proceeding.

As noted above, Claim Nine alleges that trial counsel were ineffective in failing to object to the "depravity of mind" jury instruction, while Claim Fourteen alleges that trial counsel were ineffective in failing to object to the prosecutor's misconduct during closing arguments.  Smith argues that the default of these two claims must be excused under *Martinez*, especially considering the cumulative prejudice that resulted from the two omissions by trial counsel.

The allegedly improper argument that serves as the basis for Claim Fourteen consists of the following:

> It has been said that evil is easy and has infinite forms.  This case supports that statement.  In this case evil was as easy as picking up a carpenter hammer, using a pair of hands guided by a mind set which was in reckless disregard of consequence or social duty.
>
> This case profiles a family tragedy.  . . .  This case also profiles certain evil violent, and murderous acts. During the early morning hours of Friday, October the 5th, 1990, an evil assailant stalked forty-seven-year-old Judith Ruth Smith, twenty year- old Wendy Cox, and twelve-year old Kristy Cox in their bedrooms as they slept.
>
> . . . .
>
> When you use a hammer on a twelve-year old, is that prompted by someone with an immoral sense, with no rectitude?  Is that evil?

ECF No. 152, p. 27 (excerpts are located at ECF No. 109-7, p. 27-28, 34).

1    When considered within the context of the evidence presented at trial, these remarks are not

2    necessarily objectionable.  During closing argument, the prosecutor is permitted to argue reasonable

3    inferences based on the evidence.  *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).  The

4    prosecutor is "allowed to strike hard blows based upon the testimony and its inferences." *United*

5    *States v. Gorostiza*, 468 F.2d 915, 916 (9th Cir.1972); *see also United States v. Bracy*, 67 F.3d 1421,

6    1431 (9th Cir.1995) (upholding statement that the defendant was an "imminent source of evil in this

7    courtroom—at this moment").  While Smith claims that they were "inflammatory" and intended "to

8    inspire personal contempt" for him, the prosecutor's remarks were an accurate description of Smith's

9    acts and inferences arising therefrom, based on evidence presented at trial.  Thus, trial counsel were

10   not performing below Sixth Amendment standards in failing to object to them, and post-conviction

11   counsel were not ineffective in not raising this issue in Smith's first collateral proceeding.

12   With regard to the "depravity of mind" instruction, trial counsel did object to the instruction at

13   the conclusion of the State's case at the second penalty hearing, just on a different ground than that

14   alleged in Claim Nine.  ECF No. 109-5, p. 28-38.  The Nevada Supreme Court, on direct appeal from

15   that proceeding, found the instruction invalid as applied to the murder of Kristy Cox.  *Smith*, 114 P.2d

16   at 267.  The court did not address the instruction as it applied to the murder of Wendy Cox (which is

17   the subject of Claim Nine) and, instead, upheld the death penalty for that murder on the grounds that

18   "the jury instructions regarding mutilation were constitutionally sound" and that "there was sufficient

19   evidence from which a reasonable jury could conclude beyond a reasonable doubt that murder of

20   Wendy involved mutilation."  *Id*. at 267-68.  The majority opinion suggested, and the dissenting

21   opinion explicitly stated, that the death penalty for Wendy's murder was based entirely on mutilation

22   as the sole aggravating factor.  *Id*.

23   Given this set of circumstances, Smith's post-conviction counsel could have reasonably

24   concluded that a claim premised on trial counsel's failure to adequately challenge the depravity of

25   mind instruction *vis-a-vis* Wendy's murder would be fruitless.  Moreover, the grounds in Claim Nine

26

1   upon which Smith is claiming trial counsel should have challenged the instruction – i.e., that the

2   legislature had eliminated depravity of mind as an aggravator prior to his second penalty hearing – is

3   of questionable merit.  While it is true that the statute had been amended to remove the aggravating

4   factor a few months prior to the hearing, the act amending the statute also contained a provision that

5   the "amendatory provisions" of the act do not apply to murders committed before October 1, 1995.

6   ECF No. 40-4, p. 330.  Accordingly, post-conviction counsel's failure to raise the ineffective

7   assistance of counsel claim contained in Claim Nine did not place is performance below an objective

8   standard of reasonableness.

9       Claim Eighteen alleges that trial counsel were ineffective in failing to move for a mistrial

10  after a disruption caused by a victim's family member that impermissibly prejudiced the jury in

11  Smith's second punishment trial.  The disruption occurred while the prosecution was displaying

12  autopsy photographs during closing argument.  ECF No. 109-7, p. 37-38.  At the time of the incident,

13  the trial judge, *sua sponte*, admonished the jury the it should disregard it and not allow it to factor into

14  their determination regarding punishment.  *Id*.

15       Although counsel did move for a mistrial at the conclusion of the trial, Smith alleges that the

16  trial judge denied the motion because it was not made at the time of the disruption and that, had

17  counsel made a contemporaneous motion, the trial judge would have been compelled to grant it.  And,

18  while the trial judge posited that counsel failed to move for mistrial earlier because the incident was

19  not "that significant," Smith alleges that this was inconsistent with the fact that the trial judge felt the

20  need to admonish the jury.

21       Smith's claim is not supported by the record.  To begin with, Smith omits the judge's

22  concluding comment on the matter which was as follows:

23         I felt, out of an abundance of caution, it was a good idea to admonish the jury
        with reference to what they had seen, but I in no way think that it's grounds for a

24         mistrial.

25  ECF No. 109-8, p. 33.  This remark undermines both of the main premises of the claim – i.e., that the

26

1   motion would have been granted if it had been made at the time of the disruption and that the

2   admonishment is, in and of itself, sufficient to show undue prejudice.

3       Also, the trial transcript establishes little more than that there was a "disruption in the

4   audience," followed shortly thereafter by a "disturbance in the hallway."  ECF No. 109-7, p. 37-38.

5   Without additional evidence as to the nature or magnitude of the disruption, Smith has no way to

6   demonstrate that counsel performed below constitutional standards in failing make a

7   contemporaneous motion for mistrial or that there is a reasonable probability that the outcome of the

8   proceeding would have been different had counsel made such a motion.

9       In sum, the ineffective assistance of trial claim alleged in Claim Eighteen is insubstantial, so

10  counsel were not ineffective in failing to present it to the state court in Smith's first post-conviction

11  proceedings.  *See Martinez*, 132 S.Ct. at 1319 ("When faced with the question whether there is cause

12  for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is

13  insubstantial, i.e., it does not have any merit or that it is wholly without factual support....").

14      For Claim Twenty-Five, wherein he alleges that Nevada's death sentence by means of lethal

15  injection violates the Eight Amendment, Smith argues that the State's suppression of execution

16  protocols until April of 2006 and the absence of a state forum to litigate the claim provide cause

17  sufficient to excuse procedural default of the claim.  These arguments are without merit.

18      In *Stewart v. LaGrand*, 526 U.S. 115 (1999) the Supreme Court held that the petitioner lacked

19  cause for failing to raise a claim that execution by lethal gas violated the Eighth Amendment because

20  the issue had been widely debated for years and several states were reconsidering the use of that

21  method of execution at the time of petitioner's default.  526 U.S. at 119-20.  Likewise constitutional

22  challenges to execution by lethal injection were common at the time Smith was litigating his first

23  collateral proceeding in state court.  *See*, *e.g*., Poland v. Stewart, 169 F.3d 573, 590 (9th Cir. 1999).

24  And, even though Claim Twenty-five is partially premised on the allegedly suppressed protocols, that

25  fact does not justify Smith's failure to bring a lethal injection claim prior to 2008.  *See Williams v.*

26

1  *Stewart*, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam) (finding lethal injection claim

2  procedurally defaulted where Arizona prisoner failed to seek evidence after introduction of lethal

3  injection as mode of execution in 1992 but before filing a post-conviction petition in 1994).

4  Likewise, Smith's argument that constitutional challenges to lethal injection are not cognizable in

5  state court does not excuse him from failing to raise the claim earlier.  *See Roberts*, 847 F.2d at 530.

6       III.  *Failure to State a Claim*

7       With respect to Claims One, Two, and Twenty-one respondents argue that they must be

8  dismissed because they each fail to state a federal claim for relief.  As explained above, Claim

9  Twenty-one is procedurally defaulted.  As to Claims One and Two, Smith has cited constitutional

10  violations in relation to each, and respondents have not shown that claims are not at least arguable

11  under federal law.  Thus, the Claims One and Two shall require a response on the merits when

12  respondents file their answer.

13       IV.  *Motion for Evidentiary Hearing*

14       Smith asks for an evidentiary hearing to develop the factual record in relation to the motion to

15  dismiss.  Specifically, he claims that an evidentiary hearing will allow him (1) to prove cause and

16  prejudice to overcome any alleged procedural default and (2) to establish that Nevada's procedural

17  default rules are not clearly established, independent of federal law, or adequate to bar federal habeas

18  review.[10]

19       Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. §

20  2254(e)(2) do not necessarily apply to Smith's request.  Even so, he must allege facts which, if true,

21  would entitle him to relief, in order to be entitled to an evidentiary hearing.  *See, e.g., Mendoza v.*

22  *Carey*, 449 F.3d 1065, 1071 (9th Cir.2006) (holding that petitioner should have been granted a hearing

23  by the district court because he alleged facts that, if true, may warrant equitable tolling).

24  _____

25       [10]       Smith's motion for an evidentiary hearing was filed prior to the issuance of *Martinez*.
His reply to the State's response, however, was filed post-*Martinez* and, as such, contains argument as
to the decision's impact on his request for an evidentiary hearing.  See ECF No. 158.

26

Smith argues that an evidentiary hearing would allow him to develop his claim that his mental illness can serve as cause to overcome the procedural default of his claims. As discussed above, however, he has not alleged facts in support of that ground that, if true, would establish cause.

The court also rejects Smith's argument that an evidentiary hearing would enable him to show cause and prejudice to excuse the default of Claim Twenty-five. Even if he could demonstrate that the State suppressed evidence that supports that claim, the deprivation of that evidence did not prevent him from raising a timely Eighth Amendment challenge to lethal injection in state court.

As to Smith's *Martinez* arguments in support of his request for an evidentiary hearing, the claims to which the decision would potentially apply in this case are identified and discussed above.

Smith contends that he is entitled to an evidentiary hearing to show that Claim Four has merit. However, the court has already accepted his proffered evidence at face value (i.e., without being tested by the respondents) and, for the reasons discussed above, concludes that Claim Four is without merit. While Smith seeks leave to conduct discovery to develop additional evidence in support of Claim Four, the court is not willing to allow such an undertaking given that Smith has not demonstrated any likelihood that the records he seeks would benefit his cause and prejudice argument.

For Claims Five, Nine, and Fourteen, the court rejects Smith's cause and prejudice arguments on legal and record-based grounds (as discussed above). As such, development of additional facts by way of an evidentiary hearing would not benefit Smith with regard to the procedural default of those claims.

As for Claim Eighteen, Smith suggests that an evidentiary hearing would allow him "to present witnesses who saw the outburst to testify as to its contents." ECF No. 158, p. 26. He has not, however, identified any such witnesses, much less proffered any declarations from them regarding the incident. And, given the passage of more than sixteen years since the event in question, the court would question the credibility of any such testimony.

Lastly, with respect to the adequacy and independence of the state procedural rules asserted by the State, Smith gives no hint as to the type evidence he would present at a hearing on this issue beyond that which has already been presented to, and considered by, the court.

For the foregoing reasons, Smith's motion for an evidentiary hearing shall be denied.

V.  *Motion for Leave to Conduct Discovery*

Smith moves for leave to conduct discovery in order to develop facts that he claims are relevant to the procedural bars asserted by the State, specifically, that trial counsel were ineffective in investigating and presenting mitigating evidence and that trail counsel were ineffective in failing to expend the necessary resources to defend the charges against him.  For the same reasons set forth above in relation to his motion for an evidentiary hearing, the court shall deny the motion.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 118) is GRANTED in part and DENIED in part.  For the reasons set forth above, the following claims in petitioner's first amended petition (ECF No. 40) are DISMISSED:  Claims Three, Four, Five, Nine, Fourteen (IAC claim only), and Sixteen through Twenty-nine.

**IT IS FURTHER ORDERED** that petitioner's motion for evidentiary hearing (ECF No. 140) and motion for leave to conduct discovery (ECF No. 146) are DENIED.

**IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the date on which this order is entered within which to file their answer to petitioner's remaining claims.  In all other respects, the scheduling of this matter is governed by the order entered on February 9, 2011 (ECF No. 98).

**IT IS FURTHER ORDERED** that petitioner's motion for leave to file excess pages (ECF No. 157) is GRANTED *nunc pro tunc* as of July 23, 2012.

DATED:  September 25, 2012.

_____
UNITED STATES DISTRICT JUDGE