1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                                **DISTRICT OF NEVADA**

8

9   JOSEPH WELDON SMITH,                    )

10                   Petitioner,            )        2:07-CV-00318-JCM-CWH

11  vs.                                     )

12  RENEE BAKER, *et al.*,                  )              **ORDER**

13                   Respondents.           )

14  _____/

15          Petitioner Smith has filed a motion seeking relief from the order and judgment denying his

16  petition for writ of habeas corpus.  ECF No. 198.  Relying on Fed. R. Civ. P. 59(e), he argues that this

17  court should reconsider: (1) its ruling that alleged ineffective assistance of post-conviction counsel

18  cannot overcome the default of his claims of ineffective assistance of appellate counsel; (2) its denial

19  of Claims Eight, Ten, and Eleven on the merits; (3) its ruling that certain claims were unexhausted on

20  direct appeal pursuant to Nevada's mandatory review statute; (4) its dismissal of Claim Twenty-five;

21  (5) its treatment of his claims of ineffective assistance of trial counsel under *Martinez v. Ryan*, 132 S.

22  Ct. 1309 (2012); and (6) its denial of claims regarding the state court's alleged lack of jurisdiction

23  (Claims One and Two).  In the alternative, Smith asks the court to grant a certificate of appealability

24  for the foregoing issues.

25          I.  *Rule 59(e) standard*.

26          Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its

1  judgment within twenty-eight days after entry of the judgment.  "A motion for reconsideration under

2  Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is

3  presented with newly discovered evidence, committed *clear error*, or if there is an intervening change

4  in the controlling law.'"  *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389*

5  *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999) (emphasis added)).  "Since specific

6  grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable

7  discretion in granting or denying the motion."  *Id*. at 1255, n.1 (quoting 11 Charles Alan Wright et al.,

8  Federal Practice and Procedure § 2810.1 (2d ed.1995)).  Even so, amending a judgment after its entry

9  remains "an extraordinary remedy which should be used sparingly."  *Id*.

10      II.  *Discussion*.

11          1.  Ineffective assistance of appellate counsel claims

12      Smith argues that this court erred when it concluded that alleged ineffective assistance of post-

13  conviction counsel cannot serve as cause to excuse the default of claims of ineffective assistance of

14  appellate counsel.  He points to the decision in *Ha Van Nguyen v. Curry*, 736 F.3d 1287 (9th Cir.

15  2013), which was issued subsequent to this court's procedural default ruling.  In that case, the Ninth

16  Circuit expanded the holding of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to include claims of

17  ineffective assistance of appellate counsel:  "We therefore conclude that the *Martinez* standard for

18  'cause' applies to all Sixth Amendment ineffective-assistance claims, *both trial and appellate*, that

19  have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral

20  proceeding."  *Nguyen*, 736 F.3d at 1295 (emphasis added).

21      Smith contends that, in light of *Nguyen*, this court must reconsider whether he can show cause

22  and prejudice to excuse the default of certain ineffective assistance of appellate counsel claims –

23  specifically, claims based on counsel's failure to raise on direct appeal the claims asserted in his

24  federal petition as Claims Twelve and Thirteen, Claim Twenty, Claims Sixteen and Twenty-three, and

25  Claim Twenty-seven.  For the following reasons, this court does not agree.

26

2

1    To begin with, Smith did not allege in his federal petition that appellate counsel was

2 ineffective for failing to raise Claims Twelve and Thirteen.  ECF No. 40, p. 120-21.  He cannot claim

3 that this court should excuse the procedural default of a claim he did not include in his federal

4 petition.

5    In Claim Twenty, Smith alleged that his constitutional rights were violated as a result of the

6 trial court's failure to instruct the jury that it could not consider "other matter" evidence under Nev.

7 Rev. Stat. § 175.552(3) before it first found Smith eligible for the death penalty – i.e., before it found

8 the existence of an aggravating circumstance beyond a reasonable doubt and that the aggravating

9 circumstance was not outweighed by mitigating evidence.  According to Smith, the decision in

10 *Hollaway v. State*, 6 P.3d 987 (Nev. 2000), demonstrates a reasonable probability that his direct

11 appeal would have succeeded if his appellate counsel had raised the issue.

12    The facts in *Hollaway*, however, bear little resemblance to those in this case.  The aggravating

13 circumstance in *Hollaway* was the robbery of a gas station attendant at knife point that resulted in a

14 conviction for second-degree armed robbery and false imprisonment (*Hollaway*, 6 P.3d at 990),

15 whereas the aggravating circumstance in Smith's case was the mutilation of his daughter, with

16 evidence establishing that he struck her in the head with a claw hammer at least 16 times prior to

17 strangling her (ECF No. 109-4, pp. 21-30, 39-40 8-10, 37-38[1]).  Moreover, the Nevada Supreme

18 Court's reversal in *Hollaway* was based, in part, on the likely prejudice that resulted from "the

19 unprovoked electric shocking of a capital defendant at his penalty hearing."  *Hollaway v. State*, 6 P.3d

20 at 997.  The other case Smith relies upon – *Butler v. State*, 102 P.3d 71 (Nev. 2004) – is also

21 distinguishable inasmuch as the Nevada Supreme Court, in concluding that there was a strong

22 likelihood that Butler was prejudiced by a misleading "other matter" instruction, "stress[ed] that

23 Butler presented compelling evidence of extreme neglect and abuse in his childhood, which the jurors

24 

25    [1] Citations to page numbers for electronically filed documents are based on the CM/ECF
   pagination.

26

1   obviously recognized in finding several mitigating circumstances, while the State alleged and the jury

2   found only one aggravating circumstance." *Butler*, 102 P.3d at 83.

3        Claim Sixteen and Twenty-three consist of allegations that the trial court's jury instructions on

4   reasonable doubt (Claim Sixteen) and "equal and exact justice" (Claim Twenty-three) impermissibly

5   lowered the State's burden of proof.  Appellate counsel was not ineffective for not raising these

6   claims because the instructions have been routinely upheld by state and federal courts.  *Leonard v.*

7   *State*, 969 P.2d 288, 296 (Nev. 1998) (upholding instruction on equal and exact justice); *Buchanan v.*

8   *State*, 69 P.3d 694, 708 (Nev. 2003) ("This court has repeatedly reaffirmed the constitutionality of

9   Nevada's reasonable doubt instruction."); *Ramirez v. Hatcher*, 136 F.3d 1209, 1215 (9th Cir. 1998)

10   (holding that the questionable language in Nevada's reasonable doubt instruction "did not render the

11   charge unconstitutional").  In like fashion, there is not a reasonable probability that the Nevada

12   Supreme Court would have found merit in Smith's claim that appellate counsel was ineffective for

13   failing to challenge his conviction and sentence because his proceedings were conducted before

14   elected judges (i.e., Claim Twenty-seven).  *See Nika v. Baker*, 59776, 2014 WL 3784142, *2 (Nev.

15   July 30, 2014).

16        In light of the foregoing, this court did not error by not excusing the procedural default of

17   Smith's ineffective assistance of appellate counsel claims.

18             2.  <u>Denial of Claims Eight, Ten, and Eleven</u>

19        Smith argues that this court committed errors of law or made erroneous factual findings in the

20   process of denying Claims Eight, Ten, and Eleven on the merits.[2]  For the most part, however, he

21   merely repeats or elaborates upon his prior arguments with respect to these claims.  He has not

22   demonstrated the existence of *clear error*.  *See U.S. v. Westlands Water Dist*., 134 F.Supp.2d 1111,

23   1131 (E.D.Cal. 2001) (explaining that a party seeking reconsideration must do more than disagree

24

25        [2]  He also argues that the court made erroneous factual findings in relation to its analysis of
Claim Four under *Martinez*.  The dismissal of Claim Four is discussed below.

26

4

1   with the court's decision or recapitulate that which the court has previously considered).  Thus, Smith

2   is not entitled to Rule 59(e) relief with respect to the court's denial of the claims.

3                        3.   Exhaustion pursuant to Nevada's mandatory review statute

4           Smith challenges this court's analysis as to whether some of his claims were exhausted on

5   direct appeal by virtue of the Nevada Supreme Court's mandatory review of death sentences under

6   Nev. Rev. Stat. § 177.055.  Nev. Rev. Stat. § 177.055 requires the state supreme court to consider

7   whether the evidence supported the finding of the aggravating circumstances; whether the sentence

8   was imposed under the influence of passion, prejudice, or any other arbitrary factor; and whether the

9   death sentence was excessive.  Relying on *Comer v. Schriro*, 463 F.3d 934, 954-56 (9th Cir. 2006),

10  and citing to *Sechrest v.Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996), this court determined that

11  Smith claims were not exhausted on direct appeal because (1) neither the statute itself nor Nevada

12  case law obligates the Nevada Supreme Court to apply federal law standards in conducting its review

13  under Nev. Rev. Stat. § 177.055 and (2) Smith had not shown that any of the claims at issue are

14  "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily apparent" in the

15  record reviewed by the Nevada Supreme Court.  ECF No. 162, p. 14.

16          According to Smith, the court's analysis was flawed because it does not offer "any rational

17  reason why Arizona's mandatory review scheme serves to exhaust federal claims under *Comer*, and

18  Idaho's mandatory review scheme serves to exhaust federal claims under *Beam v. Paskett*, 3 F.3d

19  1301, 1305-07 (9th Cir. 1993), but Nevada's mandatory review scheme, which is nearly identical to

20  those in Arizona and Idaho, does not serve to exhaust federal claims."  ECF No. 182, p. 5.  While this

21  argument addresses the first point above, Smith still has not demonstrated that the particular claims at

22  issue[3] were "clearly encompassed" within the scope of Nevada's mandatory review provision and

23  "readily apparent" in the record before the Nevada Supreme Court.

24  _____

25          [3]  Claims Eight, Nine, Ten, Fourteen, Sixteen, Twenty, Twenty-three, and Twenty-eight are the
    claims Smith identifies as the ones exhausted by the Nevada Supreme Court's mandatory review.  ECF
    No. 141, p. 21.

26
                                                    5

1    In this regard, this court notes that it addressed three of the claims (Claims Eight, Ten, and

2 Fourteen) on the merits, in any case.  Of the remaining claims, a few are arguably within the scope of

3 mandatory review, but this court is not convinced that any of them were obvious from the state court

4 record.  *Cf. Comer*, 463 F.3d at 955-56 (finding that claims based on petitioner's compromised

5 physical and mental condition during sentencing and his absence from a competency hearing were

6 readily apparent from transcripts and videotape before the Arizona Supreme Court).  As such, the

7 court did not commit clear error with respect to this issue.

8                       4.   Dismissal of Claim Twenty-five

9    Smith contends that this court should reconsider its decision to dismiss Claim Twenty-five, a

10 claim in which Smith alleged that Nevada's death sentence by means of lethal injection violates the

11 Eighth Amendment.  The dismissal of the claim was based on a finding that it was barred by the

12 doctrine of procedural default because Smith had not presented it to the state court until his second

13 state post-conviction proceeding, in which the Nevada Supreme Court dismissed it as untimely-filed

14 under Nevada law.  ECF No.162, p. 12.  This court rejected Smith's arguments that the procedural

15 default should be excused because of the State's alleged suppression of execution protocols and the

16 absence of a state forum to litigate the claim.  *Id.*, p. 24.

17    As to the latter point, the court cited *Roberts v. Arave*, 847 F.2d 528, 530 (9th Cir. 1988), for

18 the proposition that the apparent futility of presenting a claim to the state court does not constitute

19 cause for procedural default.  Smith argues that his was error because *Roberts* is not on point and the

20 Nevada Supreme Court held, in *McConnell v. State*, 212 P.3d 307, 310-11 & n.5 (Nev. 2009), that

21 challenges to the Nevada's lethal injection protocol and procedure are not cognizable in a state court.

22 The correct approach, according to Smith, is that found in *Harris v. Duckworth*, 909 F.2d 1057 (7th

23 Cir. 1990), where the Seventh Circuit held that a petitioner was excused from presenting to the state

24 courts a federal constitutional claim that the Indiana Supreme Court "definitively decid[ed]" it would

25 not entertain in any case.  *Harris*, 909 F.2d.at 1058-59.

26

                                        6

As an initial matter, the issue as to whether a claim challenging the constitutionality of Nevada's lethal injection procedures was cognizable in a state post-conviction habeas petition was far from "definitively decided" at the time Smith defaulted the claim. *See*, *e.g.*, *State v. Haberstroh*, 69 P.3d 676, 686 (Nev. 2003) (rejecting petitioner's claim because he failed "to provide any facts demonstrating that pain inflicted during lethal injection is unnecessary or gratuitous"). Even if it was not procedurally defaulted in this court, however, the claim would not, for the reasons that follow, provide a basis for granting relief in this proceeding.

To the extent that it presents a general challenge to lethal injection as a method of execution, Claim Twenty-five is meritless in light of *Baze v. Rees*, 553 U.S. 35 (2008). In *Baze*, the Supreme Court, on an appeal from a judgment in a civil rights action, ruled Kentucky's lethal injection protocol to be constitutional. *Baze*, 553 U.S. at 62-63. The *Baze* holding essentially forecloses any argument that lethal injection, no matter how administered, is necessarily unconstitutional. It also demonstrates that lethal injection can be administered in a manner that does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

To the extent that Smith challenges the specific protocol employed by the State of Nevada, such a challenge is not cognizable in this federal habeas corpus action. In *Nelson v. Campbell*, 541 U.S. 637 (2004), a state prisoner sentenced to death filed a civil rights action, under 42 U.S.C. § 1983, alleging that the state's proposed use of a certain procedure, not mandated by state law, to access his veins during a lethal injection would constitute cruel and unusual punishment. *Nelson*, 541 U.S. at 641. The Supreme Court reversed the lower courts' conclusion that the claim sounded in habeas corpus and could not be brought as a section 1983 action. The Supreme Court ruled that section 1983 was an appropriate vehicle for the prisoner to challenge the particular lethal-injection procedure prescribed by state officials. *Nelson*, 541 U.S. at 645. The Court stated that the prisoner's suit challenging "a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself [because by altering the lethal-injection procedure] the

7

1   State can go forward with the sentence." *Id.* at 644.

2        In *Hill v. McDonough*, 547 U.S. 573 (2006), the Court reaffirmed the principles articulated in

3   *Nelson*, ruling that an as-applied challenge to lethal injection was properly brought by means of a

4   section 1983 action. *Hill* 547 U.S. at 580-83. Both *Nelson* and *Hill* suggest that a section 1983 claim

5   is the more appropriate vehicle for an as-applied challenge to a method of execution. *See also*

6   *Beardslee v. Woodford*, 395 F.3d 1064, 1068-69 (9th Cir. 2005) (holding that claim that California's

7   lethal injection protocol violates the Eighth Amendment "is more properly considered as a 'conditions

8   of confinement' challenge, which is cognizable under § 1983, than as a challenge that would

9   implicate the legality of his sentence and thus be appropriate for federal habeas review.").

10        Because an as-applied challenge to a method of execution is more akin to a suit challenging

11   the conditions of custody rather than the constitutionality of the petitioner's custody or sentence, it

12   must be brought as a civil rights action under 42 U.S.C. § 1983. Accordingly, Claim Twenty-five, to

13   the extent that it challenges Nevada's specific execution procedures, is subject to dismissal as not

14   cognizable in this federal habeas corpus action. Smith is not entitled to Rule 59(e) relief with respect

15   to the court's dismissal of the claim.

16              5.  <u>Treatment of ineffective assistance of trial counsel claims under *Martinez*</u>

17        In its decision on respondents' motion to dismiss, this court rejected Smith's arguments that

18   *Martinez* provided cause and prejudice to overcome the procedural default of several of his claims.

19   ECF No. 162, p. 17-24. Smith argues that this court's *Martinez* analysis was flawed because the court

20   did not adhere to the then-recent holding in *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013), as to

21   showing necessary to meet the substantiality requirement for defaulted ineffective assistance of trial

22   counsel claims.[4]

23        In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the United States Supreme Court described the

24

_____

25      [4] The claims for which Smith seeks reconsideration on this ground are Claims Four, Five, Nine,
Fourteen, and Eighteen.

26

1   *Martinez* test as consisting of four requirements:

2       We consequently read Coleman as containing an exception, allowing a federal habeas
        court to find "cause," thereby excusing a defendant's procedural default, where (1) the
3       claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the
        "cause" consisted of there being "no counsel" or only "ineffective" counsel during the
4       state collateral review proceeding; (3) the state collateral review proceeding was the
        "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel
5       claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim]
        . . . be raised in an initial-review collateral proceeding."

6

7   *Trevino*, 133 S.Ct. at 1918 (citing and quoting *Martinez*, 132 S.Ct. at 1318–19, 1320–21).  The court

8   of appeals in *Detrich* noted that, for a claim of ineffective assistance of trial counsel to be

9   "substantial," the petitioner must only to show that the merit of the claim is debatable among

10  reasonable jurists.  *Detrich*, 740 F.3d at 1245 (noting that the *Martinez* court cited to *Miller–El v.*

11  *Cockrell*, 537 U.S. 322 (2003), in discussing substantiality).  A plurality of the court sitting *en banc*

12  also held that "[a] prisoner need not show actual prejudice resulting from his PCR counsel's deficient

13  performance, over and above his required showing that the trial-counsel IAC claim be 'substantial'

14  under the first *Martinez* requirement."  *Id*. at 1245-46.

15      As to the latter holding, however, the court in *Clabourne v. Ryan*, 745 F.3d 362 (9th Cir.

16  2014), noted that a majority of the *Detrich* panel rejected that view and concluded instead that, to

17  demonstrate cause, "the petitioner must show that his post-conviction relief counsel was ineffective

18  under *Strickland* . . . ."  *Clabourne*, 745 F.3d at 376; *see also Sexton v. Cozner*, 679 F.3d 1150, 1157

19  (9th Cir. 2012).  That is, the petitioner must "establish that both (a) post-conviction counsel's

20  performance was deficient, and (b) there was a reasonable probability that, absent the deficient

21  performance, the result of the post-conviction proceedings would have been different."  *Id*. at 377.

22      This was the exact standard that this court employed in its *Martinez* analysis of Smith's

23  defaulted ineffective assistance of trial counsel claims.  See ECF No. 162, p. 18.  For all of those

24  claims except for Claim Eighteen, the court determined that Smith could not establish cause and,

25  therefore, it did not address the prejudice prong (i.e., the substantiality of the underlying trial IAC

26

9

1   claim) of the *Martinez* test.  With respect to Claim Eighteen, the court stands by its prior

2   determination that the claim is wholly without merit – i.e., insubstantial.  Accordingly, Smith is not

3   entitled to Rule 59(e) relief with respect to the court's treatment of his ineffective assistance of trial

4   counsel claims under *Martinez*.

5                    6.   Claims premised on the state court's alleged lack of jurisdiction

6           Claims One and Two of Smith's petition alleged that his constitutional rights were violated

7   because the Nevada courts lacked jurisdiction over the criminal proceeding that resulted in his

8   convictions and sentences.  This court denied the claims because the determination of whether a state

9   court is vested with jurisdiction under state law is a function of the state courts, not the federal

10  judiciary, and because merely alleging a due process violation does not transform a state law issue

11  into a federal one.  ECF No. 175, p. 10.

12          Smith argues that this court neglected to address whether the state court made an unreasonable

13  determination of the facts for the purposes of 28 U.S.C. § 2254(d)(2) – specifically, the state court

14  finding that the absence of a file stamp on his complaint did not mean that it was not properly filed

15  before the issuance of the arrest warrant and the beginning of the preliminary hearing.  The court did

16  not reach that issue, however, because it was not relevant to its analysis of the two claims.  A

17  determination that a state court adjudication is based on an unreasonable determination of the facts

18  under § 2254(d)(2) means only that the federal habeas court is not required to give deference to that

19  adjudication.  Because, the court denied the claims *de novo*, it did not delve into the question of

20  deference under § 2254(d).  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . .

21  deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether

22  AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus

23  if his or her claim is rejected on *de novo* review.").

24          Smith also claims that, in denying Claims One and Two, this court failed to recognize "the

25  importance of subject matter jurisdiction as one of the oldest and most sacred purposes of the Great

26

10

1  Writ." ECF No. 177, p. 40.  He misses the point, however.  This court did not suggest that a

2  judgment rendered by a court lacking subject matter jurisdiction can nonetheless be valid.  Rather, the

3  court concluded that the question whether the state court possessed subject matter jurisdiction in this

4  case was a matter of state law beyond the province of the federal habeas court.  The following excerpt

5  from an Eighth Circuit case is instructive:

6       The district court stated that "[t]his Court can think of no greater denial of due process
        or of a greater miscarriage of justice than to be sentenced to prison for a term of four
7       years by a court which has no jurisdiction."  To reach the question of denial of due
        process or miscarriage of justice, however, the court must first determine that the
8       sentencing court has no jurisdiction.  This is not, however, a determination for the
        federal courts when the question of jurisdiction is one of valid state law only.
9
10      Jurisdiction is no exception to the general rule that federal courts will not
        engage in collateral review of state court decisions based on state law: "The adequacy
11      of an information is primarily a question of state law and we are bound by a state
        court's conclusion respecting jurisdiction. . . .  This determination of jurisdiction is
12      binding on this [federal] court."  *Chandler v. Armontrout*, 940 F.2d 363, 366 (8th Cir.
        1991); *see Johnson v. Trickey*, 882 F.2d 316, 320 (8th Cir. 1989) (adequacy of
        information is question of state law binding on federal courts).  The Second Circuit has
13      directly addressed the question of federal review of state court jurisdiction based on
        state law, denying a habeas petition brought on the claim that a New York statute
14      deprived the state trial court of jurisdiction.  *Roche v. Scully*, 739 F.2d 739, 741 (2nd
        Cir. 1984).  The court stated that "'no federal court to our knowledge has ever granted
15      a writ where a state court's asserted lack of jurisdiction resulted solely from the
        provisions of state law.'"  *Id.* at 741-42 (quoting *United States v. Mancusi*, 415 F.2d
16      205, 209 (2nd Cir. 1969)).

17      The question of whether the Missouri courts had jurisdiction to sentence Poe
        was one solely of state law and is therefore not properly before this court. . . .
18

19  *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994).  *See also Wills v. Egeler*, 532 F.2d 1058, 1059 (6th

20  Cir. 1976) ("Determination of whether a state court is vested with jurisdiction under state law is a

21  function of the state courts, not the federal judiciary.").  Smith cites to no authority that would permit

22  a federal habeas court to set aside a state court determination regarding the existence of subject matter

23  jurisdiction under state law.  Thus, the court stands by its denial of Claim One and Two.

24       7.  Certificate of appealability

25       Smith argues that, to the extent the court does not grant him relief from the order and

26

11

1   judgment denying his petition, he is at least entitled to a certificate of appealability with respect to the

2   issues presented above.  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the

3   petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to

4   claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the

5   district court's assessment of the constitutional claims debatable or wrong" or that the issues were

6   "adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484

7   (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA

8   will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the

9   denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

10       Having revisited the rulings discussed above, the court agrees that its rejection of Smith's

11   *Martinez*-based cause and prejudice claim in relation to Claim Four is at least debatable among

12   reasonable jurists.  In Claim Four, Smith alleged that trial counsel were ineffective for failing to

13   present mitigating evidence of mental illness.  In concluding that Smith had failed to make an

14   adequate showing to excuse his procedural default of the claim, this court questioned the mitigatory

15   value of the mental health evidence that he had proffered.  It is at least arguable, however, that trial

16   counsel were ineffective by not presenting the testimony of mental health experts at Smith's penalty

17   hearing and that post-conviction counsel was ineffective by failing to present the issue in Smith's

18   initial collateral proceeding.  *See Clabourne*, 745 F.3d at 382-83 (discussing the history of petitioner's

19   mitigation-based claim).

20       III.  *Conclusion*

21       For the reasons discussed above, Smith is not entitled to relief under Rule 59(e) with respect

22   to this court's order and judgment denying his habeas petition on the merits, except for the court's

23   decision to deny a COA.

24       **IT IS THEREFORE ORDERED** that petitioner's motion to alter or amend judgment under

25   Rule 59(e) (ECF No. 177) is GRANTED with respect to the court's decision to deny a COA.  In all

26

12

1  other respects, the motion is DENIED.

2     **IT IS FURTHER ORDERED** that the Certificate of Appealability is amended to include the

3  following issue:

4         Whether petitioner can establish cause and prejudice to overcome the
       procedural default of Claim Four, which alleges that trial counsel were ineffective in
5      failing to present mental health evidence in the penalty phase of petitioner's trial.

6     DATED:  November 5, 2014.

7

8

9     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13